### COLLINS et al. v. SMITH et al.

(Circuit Court, E. D. Pennsylvania. January 23, 1908.)

#### No. 24.

1. JUDGMENT—MOTION FOR JUDGMENT NOTWITHSTANDING VERDICT—GROUNDS.
   Under the Pennsylvania practice, where a verdict for plaintiff is directed by the court and no question of law is reserved, the court cannot enter judgment for the defendant notwithstanding the verdict.
   [Ed. Note.—State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

2. POWERS—INSTRUMENT CREATING POWER—VALIDITY OF EXECUTION—LIMITA-
TION AS TO TIME.

Where a bondholder of a corporation signed an instrument agreeing to deposit his bonds with a committee on demand, and authorizing such committee to sell the same, but added after his signature the words "till 1906," the limitation applied to the entire instrument, and a sale of the bonds by the committee after January 1, 1906, was unauthorized and conveyed no title, where the purchaser knew that the committee was acting under delegated power, and was therefore bound to inquire as to its scope.

3. SAME—EXECUTION BY AGENT AFTER EXPIRATION—ESTOPPEL.

The bondholder in such case had the right to leave the bonds in the hands of the committee for a reasonable time after the authority to sell them expired, and was not estopped by such fact nor by receiving notice from the committee of the sale from asserting his ownership by selling and transferring them to another, especially where the bonds were in foreclosure and not salable in the open market, and the purchasers from the committee were notified of such transfer before paying the consideration, and thereupon deposited the same in trust.

4. TROVER AND CONVERSION—DAMAGES—CONVERSION OF BONDS.

Defendants purchased from a reorganization committee bonds of an insolvent corporation in process of foreclosure at a large discount. Certain of the bonds the committee had no authority to sell, of which fact defendants had notice, but nevertheless took the same, depositing the price in trust, and used them at par in payment for the corporation's property bought at the foreclosure sale. Held that, in an action for conversion by the real owner, defendants were liable for such par value.

At Law. On motions by defendants for new trial and for judgment notwithstanding the verdict.

Burr, Brown & Lloyd, for plaintiffs.

Henry C. Boyer and Wm. A. Glasgow, Jr., for defendants.

J. B. McPHERSON, District Judge. In the present state of the record, the motion by the defendants for judgment notwithstanding the verdict is not appropriate. No question of law was reserved at the trial; the jury was simply directed by the court to render a verdict in favor of the plaintiff, and, according to the established practice in Pennsylvania, it would therefore be impossible to enter judgment in favor of the defendants, even if they were otherwise entitled thereto. This motion must be refused.

In order to understand the question raised by the motion for a new trial, a brief recital of the facts is necessary. The Bay Shore Terminal Company was a Virginia corporation, organized to build a short line of railroad from the city of Norfolk. In 1902 it executed a mortgage for $500,000, under which about $178,000 of bonds were outstanding in September, 1905. By this time the company had gone into the hands of receivers, and about the 12th of that month most of the bondholders—some of them being stockholders, also—signed a power of attorney, of which the following is a copy:

"Know all men by these presents, that we, the undersigned bond and stock holders of the Bay Shore Terminal Company, in order to facilitate a sale or reorganization of said company, do hereby agree to place, upon call, all of our bonds and stock of said company, in the hands of Messrs. S. L. Foster, W. C. Cobb, and W. T. Simcoe, as a committee, with full power as our attorneys in fact to sell, dispose of, exchange, and contract concerning said bonds and stock, and upon our behalf in respect thereto; hereby ratifying and confirming all said committee may do in the premises. And we agree to accept the considera-

tion received for said bonds and stock, whether in cash or securities; provided only that such consideration shall be of equal benefit to all the signers hereof without preference."

Among the bondholders that signed were the legal plaintiffs—S. Q. Collins ($8,000) and George L. Arps ($1,000). Shortly afterwards the bonds and stock of the signers were deposited with the committee, and receipts were duly issued in the following form:

"Committee's Receipt.

"$ ————

"Received of ————— Bond No. ————— of the Bay Shore Terminal Company, and certificate of ————— capital stock No. ————— for ————— shares. Said certificate being indorsed. in blank, to be held and disposed of in accordance with agreement and power of attorney to the undersigned.

"—————,
"—————,
"—————,
"Committee."

On January 25 or 27, 1906, the committee agreed to sell all the bonds and stock in their possession to Messrs. Groner and Taylor, two members of the Norfolk bar, who were acting as agents for Edward B. Smith & Co., the defendants. The price agreed to be paid to the committee for the bonds was 40 cents on the dollar—the stock to be transferred as a bonus—but the defendants used the bonds afterwards at par and interest in partial payment of their successful bid for the property of the terminal company, which was sold at foreclosure sale under the mortgage. They are now sued on behalf of the use plaintiff, to whom the legal title of Collins and Arps has been assigned, and it is asserted as the ground for recovery that (for reasons to be stated in a moment) the title to the Collins and Arps bonds did not pass to the defendants by the committee's agreement of sale, but that the whole equitable interest therein was transferred by Collins and Arps to Zell, the predecessor in title and assignor of Vandyke, who is the present use plaintiff. The action would formerly have been called trover, but is now labeled trespass by the Pennsylvania statute; the foundation of the suit being the conversion of the bonds to the defendants' own use. Recovery is sought of the full amount at which the bonds were valued in paying for the property bought at the foreclosure sale.

The committee's authority to sell the bonds in question is denied, because it was expressly limited (so the plaintiff contends) by both Collins and Arps at the time when they signed the power of attorney. Collins added to his signature, "Till January 1st, 1906," and Arps added, "Till 1906," both limitations being identical in meaning. Precisely what is the true meaning of either phrase is the first question in dispute. The defendants' position is that Collins and Arps intended merely to limit the time within which the committee might call for the deposit of their bonds and stock, and that they did not intend, if such call was made before 1906, to limit the power of the committee to sell thereafter—except, of course, as each signer retained the implied power to limit it, whenever he chose, before a sale took place, by giving the committee notice that he revoked the agency, and

elected to withdraw his securities. The plaintiff's position, with which I fully agree, is that the ordinary and natural meaning of the words should prevail, and that the proper interpretation is that Collins and Arps (and some other signers who also added limitations to their names) were putting a limit of time upon the whole agreement, and giving notice that they, at least, would not be bound by any one of its terms after the date selected by themselves. I think the defendants' interpretation is strained and untenable. It requires the court to assume that Collins and Arps meant what they did not say, and the argument in support of the assumption seems to be that, in the defendants' opinion, it would have been more to the bondholders' advantage to limit the time within which the bonds might be called than to limit the time within which they might be called and sold. But an unambiguous writing cannot be construed according to suppositions or assumptions, however plausible. If the words bear a single plain meaning, this meaning must be followed, even although it may seem to other persons that the parties might have made a better bargain. It is not for the court to indulge in conjecture concerning the reasons that might have moved, or in the opinion of the court that ought to have moved, Collins and Arps to say what they have not chosen to express. Dealing with their own property, as they had a right to deal, they could impose such limitation on the committee's agency as they saw fit, and their contract cannot be altered in order to make it accord with the court's opinion that, under all the circumstances, something else would have been more to their advantage. Certainly, as it seems to me, when Collins and Arps signed this power of attorney, saying, "Till 1906," they meant to limit in some manner the obligation that was attested by their signatures. This obligation, if it had not been qualified, would unquestionably have extended to all the terms of the instrument. If they had simply put their names to the paper, without more, it cannot be doubted that they would have been bound by every one of its provisions; and therefore, when they qualified their obligation by the words they added, I think they clearly qualified the whole instrument, and succeeded in saying (what I believe they intended) that they would not be bound at all after the end of the year 1905. If this construction is correct, it follows that Collins and Arps had impressed upon the face of the power of attorney a distinct notice that their bonds and stock could not be sold by the committee after the beginning of 1906. Of course, the committee was bound to take notice of its own limited agency, and intending purchasers who knew, as the defendants knew, that they were dealing with agents and not with principals, were bound to inquire concerning the source and scope of the delegated power. Such inquiry the defendants made, but unfortunately they did not demand the exhibition of the original power of attorney by the committee, but were content to accept an imperfect copy, which did contain "till 1906" opposite the name of Arps, but omitted altogether the limitation after the name of Collins. It is therefore evident that, since the defendants chose to accept the committee's mistaken statement (appearing upon the copy) concerning the absence of limitation by Collins, and apparently chose to interpret in the wrong sense the Arps limitation, of which they concededly had

notice, they are bound by the risk they were thus willing to take, and could certainly acquire no better title than the committee was able to give. And, as the committee could give them no title at all, it follows that they took none by the attempted sale of January 25th or 27th, unless the conduct of Collins and Arps, or of their successors in title, was such as to estop the use plaintiff from setting up in this suit the true ownership of the bonds.

This is the second defense, and needs some further consideration. Undoubtedly, as it seems to me, Collins and Arps were at liberty to leave their securities in the hands of the committee, at least for a reasonable time after January 1st. The agency of the committee having been expressly limited by a restriction on the very face of the instrument that gave them power to act, Collins and Arps ran little risk in leaving their property in the hands of their former agents. The bonds of the terminal company were not bought and sold on the market generally, they had then no attraction for the ordinary purchaser, and the committee could be trusted to dispose of those in their hands to such persons only as might be interested in the impending effort to reorganize the company. In the usual course of events, only such persons would deal with the committee at all, and during the negotiations the limitation imposed by Collins and Arps would almost certainly be disclosed. Moreover, Collins and Arps held the committee's receipts for their bonds and stock, and for all practical purposes these were as good as the securities themselves. Receipts of this kind are well known in proceedings to reorganize a corporation, and they are transferred almost as freely as the bonds or stock they represent. Therefore it was neither careless nor unreasonable to permit the bonds to remain in the custody of the committee until February 10th—this date being named because by that time Collins and Arps had sold their receipts to a representative of Zell, the assignor of the use plaintiff. I assume, as should be assumed on this motion, that both Collins and Arps received the notice that was sent out by the committee on the evening of January 27th, after the agreement of sale with the defendants had been concluded. The notice, which will speak for itself, is as follows:

"January 27th, 1906.

"Dear Sir: We, the undersigned, having heretofore been appointed a committee and attorneys in fact for certain of the bond and stock holders of the Bay Shore Terminal Company, to sell, dispose of, exchange or contract concerning said bonds and stock, beg to advise you that, pursuant to such authority, we have sold all of the securities of the subscribers to said agreement at the rate of forty cents on the dollar for each bond, the stock going with the same as a bonus, with the right to the holder of the committee's receipt, should he so elect, to exchange his bonds for new bonds of the company proposed to be reorganized by the purchasers. A copy of the agreement and terms under which this sale was made is on file in the office of the secretary, and can be seen upon application.

"Yours truly,

S. L. Foster,<br>"W. T. Simcoe,<br>"W. C. Cobb,<br>"Committee."

Certainly, the mere receipt of this notice would not be sufficient to estop Collins and Arps from asserting their title, and, in my opinion,

no further evidence of ratification is to be found in this record that ought to have carried the question to the jury. It is undisputed that Collins and Arps knew nothing of the agreement to sell to the defendants before January 27th or 29th at the earliest; and it is also undisputed that their bonds had either then been sold, or were shortly afterwards sold, to Zell, the assignor of the use plaintiff, and that the committee's receipts were delivered to the purchaser on February 3d and February 10th, at the latest. It appears also without contradiction, that Zell knew on February 4th of the agreement to sell to the defendants, and that he acted promptly on this knowledge by notifying Groner and Taylor, the defendants' agents in this transaction, on February 5th or 6th that he was entitled to this $8,000 of bonds. At the time he gave this notice, the defendants had neither received the bonds from the committee nor paid the contract price, and they were therefore abundantly able to protect themselves against a claim, of which they had thus received timely notice. How they have been injured does not appear, for the evidence shows that they did protect themselves effectively; and, as a result of their solicitude, the money paid by them for the bonds in controversy is now in the hands of trustees, awaiting the result of this litigation. Nevertheless, and without waiting until it should be finally determined whether they had acquired a valid title, they converted the bonds to their own use by turning them in at par and accrued interest upon the purchase price at the foreclosure sale; and, as I think, they have thereby made themselves liable to the use plaintiff for the price which they were thus able to get. To require the plaintiff to accept 40 cents on the dollar would, in effect, compel him to sell his property to the defendants at a price to which the owners did not agree since it was fixed by a contract to which they were not parties either as principals or by an agent.

A third question raised by the motion for a new trial concerns the rulings of the court upon certain testimony concerning a contract that was said to have been made on January 17, 1906, by the agent of Collins for the sale of his bonds. It is not necessary to pass upon the correctness of these rulings, for, in deciding to give the jury a binding instruction, I did not consider at all the testimony to which they refer, and the instruction was therefore not influenced thereby in the slightest degree.

The motion for a new trial is refused.